EDUVIGIS QUIÑONES SANTIAGO, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, compuesta por los Sres. MANUEL LEÓN PARRA, FRANCISCO PAZ GRANELA y JUAN M. HERRERO, demandada, y RAMÓN MONTANER en su carácter de ADMINISTRADOR DEL FONDO DEL SEGURO DEL ESTADO, recurridos.

Núm. 193.—*Sometido:* Abril 15, 1940. *Resuelto:* Junio 12, 1940.

*Virgilio Brunet* y *Miguel A. Casiano,* abogados del recurrente; *M. León Parra,* abogado de la demandada; *Hon. Procurador General George A. Malcolm, Emilio de Aldrey, Procurador General Auxiliar* y *Víctor J. Vidal González,* Asesor Legal éste del Fondo del Estado, abogados del Administrador recurrido.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

El peticionario en el presente recurso trabajaba con el Sr. José Coll y Vidal en calidad de *jockey* de sus caballos de carrera. Por sus servicios recibía el 15 por ciento del premio que correspondiese a su patrono. El día 4 de diciembre de 1938 obtuvo el primer premio en una de las carreras que se celebraban en cierto hipódromo de esta ciudad, correspondiéndole $22. Ese mismo día, mientras participaba en otra carrera sufrió el accidente que ha dado origen a esta reclamación. El administrador del Fondo le prestó asistencia médica y le pagó sus dietas a razón de $5 semanales, hasta el 5 de marzo de 1939 en que se las rebajó a $3 semanales.

El 16 de mayo de 1939 recurrió ante la Comisión Industrial alegando que como el día del accidente su jornal ascendió a $22, de acuerdo con el segundo inciso del artículo tercero de la Ley núm. 45 de 18 de abril de 1935 (Leyes de ese año pág. 257) tenía derecho ". . . . . a una compensación de la mitad del jornal que percibía el día del accidente . . ." El 16 de enero actual la Comisión dictó su resolución, de la cual copiamos los siguientes párrafos:.

"El día 4 de diciembre de 1938 Eduvigis Quiñones Santiago, mientras corría, como *jockey,* un caballo propiedad de don José Coll y Vidal, se fracturó la pierna izquierda. El Sr. Coll y Vidal es miembro de la Asociación de Dueños de caballos denominada Club Hípico Insular, la cual tiene una póliza con el Fondo del Seguro del Estado que cubre el riesgo de compensaciones a obreros por accidentes del trabajo a los obreros y empleados de todos y cada uno de sus asociados.

"  .   .   .   .   .   .   .   .

"Declaró bajo juramento el Administrador del Fondo del Seguro del Estado que debido a lo eventual que resulta el sueldo a devengar por los *jockeys,* el cual depende del premio que obtengan los ejemplares que montan y si no obtienen ninguno no perciben nada por su trabajo, se les estimó un jornal promedio de $10 semanales allá cuando el *pool* ascendía a $25,000 ó $30,000 en la semana, pero que debido a la baja que ha tenido el *pool* y el negocio hípico en general han tenido que reducir dicho jornal promedio a la suma de $6 a la semana, para lo cual los patronos Club Hípico Insular y Asociación Hípica de Puerto Rico convinieron con él en que ese jornal era justo y aceptable.

"  .   .   .   .   .   .   .   .

"De no existir un convenio mediante el cual se determine un jornal promedio para los *jockeys,* debido a lo eventual del jornal a percibir por estos obreros, resultaría que todos los *jockeys* que se lesionen, a menos que hayan obtenido algún premio durante el día en que se lesionen y con anterioridad al accidente, no ganarían jornal alguno y no tendrían derecho a compensación ni a dietas, siendo por lo tanto necesario en estos casos, así como en los casos en que se paga a los obreros un jornal a base del número de horas que trabajan, que exista un convenio similar al acordado entre el asegurador y las asociaciones de dueños de caballos de carrera, pues de lo contrario no menos de un 90 por ciento de los obreros lesionados se perjudicarían por no percibir jornal alguno el día de la ocurrencia del accidente, pues es una cosa de conocimiento general que todo *jockey* que se lesiona por haber sufrido una caída de su monta, no obtiene premio alguno y su 15 por ciento se reduciría a cero.

"La Comisión Industrial una vez estudiadas las pruebas de ambas partes y considerando lo perjudicial que sería para los *jockeys* el no existir un convenio de un jornal promedio, RESUELVE que de acuerdo con lo convenido entre los patronos y el asegurador los *jockeys* solamente han tenido derecho a $5 semanales de dietas, esto

es el 50 por ciento del jornal promedio de $10, y luego según fué modificado dicho convenio, a $3 semanales de dieta, que equivale . al 50 por ciento de los $6 del jornal promedio.  En el caso de epígrafe al ocurrir el accidente a este obrero estaba en vigor el primer convenio por el cual correspondía al obrero una dieta de $5 semanales, según le fueron pagados por el Administrador hasta el día 15 de marzo de 1939, debiéndosele continuar pagando los mismos $5 hasta la fecha en que fué dado de alta, en vez de los $3 pagados por el Administrador después del día 15 de marzo de 1939.''

Contra dicha resolución ha interpuesto el obrero este recurso, porque a juicio de él, la Comisión erró, primero, al resolver que el obrero sólo tenía derecho a $5 semanales en concepto de dietas, cuando el día del accidente había recibido un jornal de $22, violando así el inciso 2 del artículo 3 de la Ley núm. 45 de abril 18 de 1935 ((1) pág. 251), y segundo, al resolver que el obrero sólo tenía derecho a $5 semanales en concepto de dietas mientras el administrador del Fondo cobra primas sobre la cantidad de $22 ganada por el obrero el día del accidente de acuerdo con lo dispuesto en el artículo 25, párrafo primero de la antes citada ley.

Examinaremos conjuntamente ambos errores.

▆ A pesar de la búsqueda que hemos hecho, no hemos podido encontrar ningún caso decidido por esta Corte Suprema o por la Corte Suprema de algún estado de la Unión parecido o igual al de autos, que nos oriente en la decisión que debe darse a casos como el presente.  Ello no obstante, somos de opinión que la resolución de la Comisión es substancialmente justa.  Disponen los artículos tercero, inciso segundo, y 25, primer párrafo, de la Ley de Compensaciones por Accidentes del Trabajo, que por el recurrente se dicen infringidos, lo siguiente:

''Artículo 3.—.         .        .         .         .

''1. .        .         .         .         .         .

''2. Si la incapacidad fuere de carácter temporal o transitoria a una compensación de la mitad del jornal que percibía el día del accidente, o que hubiere de percibir a no ser por la ocurrencia del accidente, durante el período de incapacidad para el trabajo, paga-

dera por semanas vencidas. El período de tal pago no excederá en ningún caso de ciento cuatro (104) semanas; *Disponiéndose,* que en ningún caso se pagará más de diez (10) dólares ni menos de uno y medio (1½) dólares semanales; *Y disponiéndose, además,* que no se concederá compensación alguna por los primeros siete (7) días subsiguientes a la fecha en que el obrero o empleado se presente al médico para recibir tratamiento.

"Artículo 25.—El Administrador del Fondo del Estado queda por la presente autorizado y facultado para tasar e imponer a todo patrono de obreros y empleados afectados por esta Ley, y se le ordena que le tase y le imponga, cuotas anuales determinadas con arreglo al precedente artículo sobre el importe total de los jornales pagados por dicho patrono a obreros y empleados que tenían o hubieran tenido derecho a los beneficios de esta Ley durante el año anterior a la imposición de las cuotas, si ésta hubiera estado vigente; *Disponiéndose,* que la recaudación de estas cuotas se hará por semestres adelantados y se llevará a cabo por el Tesorero de Puerto Rico, a través de los colectores de rentas internas, y de aquellos funcionarios del Gobierno que, por reglamento, el Tesorero autorizare."

Dice el primero que el obrero tendrá derecho a una compensación de la mitad del jornal que percibía el obrero el día del accidente. Pero es lo cierto que los *jockeys* no devengan salario alguno. Su remuneración depende del orden en que arriben a la meta los días de carreras. De no existir un convenio entre el Administrador del Fondo del Estado y el Club Hípico Insular fijando la remuneración promedio que por sus servicios perciben los *jockeys,* no habría base para computar la compensación de un *jockey* que, a pesar de haberse lesionado, no hubiere llegado entre los primeros cinco a la meta. En tales casos, sería forzoso concluir que tales *jockeys* no tienen derecho a compensación. Ése no es el espíritu de la Ley de Compensaciones a Obreros.

Con relación al segundo error, dice el recurrente en su alegato que al tasar y cobrar el recurrido la prima correspondiente sobre la suma de $22 recibida por el peticionario el día del accidente, consideró dicha suma como el jornal recibido por él, a base del cual estima que está el asegurador obligado a pagarle sus dietas. Olvida el recurrente que a

virtud del convenio celebrado entre el Club Hípico Insular y el Administrador del Fondo del Estado fijando el salario promedio, éste no sólo paga dietas a los *jockeys* lesionados que llegan con sus caballos entre los primeros cinco a la meta, sino también a aquellos que, en ausencia de un convenio, a nada tendrían derecho debido al lugar rezagado que con relación a los otros ocupaban al llegar a la meta.

*Debe confirmarse la resolución recurrida.*

El Juez Asociado Sr. De Jesús no intervino.